

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

Matthew J. Maddox
Assistant United States Attorney
Matthew.Maddox2@usdoj.gov

Suite 400
36 S. Charles Street
Baltimore, MD 21201-3119

MAIN: 410-209-4800
FAX: 410-962-0716
FAX: 410-962-0716

September 7, 2016

Charles L. Waechter, Esquire
1435 Sulphur Spring Road
Baltimore, Maryland 21227

    Re:    United States v. Paul Daniel Bollinger, Criminal No. MJG-16-0367

Dear Mr. Waechter:

    This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by **September 16, 2016**, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

    1.    The Defendant agrees to plead guilty to Count One of the Indictment charging him with Distribution of Child Pornography, in violation of Title 18, United States Code, Sections 2252(a)(2),(b)(1) and 2256. The Defendant admits that he is, in fact, guilty of the foregoing offense and will so advise the Court.

### Elements of the Offense

    2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are that, in the District of Maryland, on the date set forth in the Indictment:

        a.    the Defendant knowingly distributed a visual depiction;

        b.    the visual depiction was distributed using any means or facility of interstate or foreign commerce, or was shipped, transported, or mailed in or affecting interstate or foreign commerce, or contained materials that had been so mailed, shipped or transported, by any means, including by computer;

        c.    producing the visual depiction involved the use of a minor engaged in sexually explicit conduct;

    d.  the visual depiction was of a minor engaged in sexually explicit conduct; and

    e.  the Defendant knew the visual depiction was of a minor and knew that the depiction showed the minor engaged in sexually explicit conduct.

### Penalties

3.  The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: a term of imprisonment of 20 years, a fine of $250,000, and a period of supervised release for life. **The minimum sentence provided by statute for the offense is a term of imprisonment of five years to be followed by a period of supervised release of five years.** In addition, the Defendant must pay $100.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. and an additional special assessment of $5,000, unless the defendant is indigent, pursuant to 18 U.S.C. § 3014. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

4.  The Defendant understands and agrees that as a consequence of his conviction for the offense to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

### Waiver of Rights

5.  The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

    a.  If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b.  If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the

---

[1] Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

      c.    If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

      d.    The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

      e.    If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against his. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

      f.    By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

      g.    If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

      h.    By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

6. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

7. This Office and the Defendant understand, agree, and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

   a. Pursuant to U.S.S.G. § 2G2.2(a)(2), the base offense level is **22**.

   b. The offense level is increased by **2**, pursuant to U.S.S.G. § 2G2.2(b)(2), because the material involved a prepubescent minor or a minor who had not attained the age of 12 years.

   c. The offense level is increased by **2**, pursuant to U.S.S.G. § 2G2.2(b)(3)(F), because the offense involved distribution.

   d. The offense level is increased by **2**, pursuant to U.S.S.G. § 2G2.2(b)(6), because the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt, or distribution of the material, or for accessing with intent to view the material.

   e. The offense level is increased by **5**, pursuant to U.S.S.G. § 2G2.2(b)(7)(D), because the offense involved 600 or more images.

   f. This Office does not oppose a **2-level** reduction in the Defendant's offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional **1-level** decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

   g. Accordingly, the final offense level is **30**.

4

8.  The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter the offense level for either offense if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

9.  This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

### Obligations of the United States Attorney's Office

10.  At the time of sentencing, this Office will recommend a lawful sentence that gives due consideration to the advisory sentencing guidelines and the sentencing factors outlined at 18 U.S.C. § 3553(a).

11.  The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character, and conduct, including the conduct that is the subject of the counts of the Indictment that this Office has agreed to dismiss at sentencing.

### Restitution

12.  For purposes of sentencing, the offense of conviction constitutes a crime of violence pursuant to 18 U.S.C. § 16. Therefore, under 18 U.S.C. §§ 3663A, 2259, and 3771, any identified victim is entitled to mandatory restitution. The restitution could include the medical bills, compensation for time missed from work, as well as counseling costs (including travel) for any of the victims related to the incident, if any such costs exist or are reasonably projected. 18 U.S.C. §§ 2259, 3663A(b)(2) and (4). The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement. The Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw Defendant's guilty plea. If the Defendant is incarcerated, the Defendant agrees to participate in the Bureau of Prisons Inmate Financial Responsibility Program.

### Forfeiture

13.  The Defendant agrees to forfeit all right, title, and interest in the following property seized by law enforcement authorities from his residence on May 25, 2016, and further agrees to take whatever steps are necessary to pass clear title to the following property to the United States:

      a.      HP Pavilion Slimline desktop computer;
      b.      WD MyBook Essential external hard disk drive;
      c.      Seagate Barracuda SATA hard disk drive;
      d.      Hitachi SATA hard disk drive;
      e.      Adaptec external hard disk drive;
      f.      SanDisk Cruzer Micro USB flash media device; and
      g.      Digital contents of the Nikon Coolpix digital camera.

14. The Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

### Collection of Financial Obligations

15. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The Defendant will promptly submit a completed financial statement to the United States Attorney's Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

### Agreement Does Not Cover Production of Child Pornography
### Or Sexual Activity with a Minor

16. The parties agree and understand that this plea agreement is being entered into prior to a full and complete forensic examination of the Defendant's computers and other electronic media. Should such examination result in evidence that the Defendant was involved in the production of child pornography or any sexual activity with a child, this Agreement would not prevent the United States in any way from prosecuting said offenses.

### Waiver of Appeal

17. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

      a.      The Defendant waives any and all motions, defenses, probable cause determinations, objections which the Defendant could assert to the Indictment, or to the Court's entry of judgment against the Defendant and imposition of sentence upon the Defendant consistent with this agreement.

6

b. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.

c. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

d. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

e. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

18. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw his guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

19. The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the

7

Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

20. This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Matthew J. Maddox
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation and with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

9-23-2016
Date

*Paul Daniel Bolly* [signature]
Paul Daniel Bollinger

I am Paul Daniel Bollinger's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

9-23-2016
Date

Charles L. Waechter, Esq.

## Attachment A: Statement of Facts
## United States v. Paul Daniel Bollinger

*The undersigned parties stipulate and agree that the following facts are true and accurate, and if this matter had gone to trial, that the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

The defendant, Paul Daniel Bollinger ("BOLLINGER"), age 57, is a resident of Windsor Mill, Maryland. BOLLINGER worked as a youth gymnastics coach in Maryland for over 30 years prior to his arrest in this case.

On or about May 15, 2016, BOLLINGER used a personal computer to distribute several computer files containing videos of child pornography in an Internet-based peer-to-peer file sharing network, a means and facility of interstate and foreign commerce. The production of the videos involved minors (including prepubescent minors) engaged in sexually explicit conduct, and the videos depicted the same conduct. For example, a file labeled "2006!!! Starting my two daughters 02 (pthc).mpg" contained a video seven minutes and three seconds in length that depicted a hand fondling and digitally penetrating the vagina and anus of a prepubescent girl. A separate file labeled "2016-02 new 9yo blonde spermed in mouth.mpg" contained a video 51 seconds in length that depicted a naked prepubescent girl with white creamy substance on her vagina and in her mouth. An adult male was depicted fondling the girl's vagina, performing oral sex on the girl, and then placing his penis in the girl's mouth, and the girl then performing oral sex on the adult male. BOLLINGER knew the videos he distributed depicted minors (including prepubescent minors) engaged in sexually explicit conduct.

Using a computer connected to the Internet, investigators identified two of the video files by hash value as being files of investigative interest to child pornography investigations and located the Internet Protocol ("IP") address where the files were being made available. Using investigative peer-to-peer software, investigators directly connected to the device at the identified IP address and downloaded (received) the video files from that device. Downloads were completed on May 15, 2016, and were determined to contain videos of child pornography.

In this way, BOLLINGER shared and distributed child pornography that was received and downloaded by investigators.

The IP address was subscribed to BOLLINGER at a residence in Windsor Mill, Maryland. Investigators obtained a search warrant for the residence and executed the warrant on May 25, 2016. During the search, investigators found an HP Pavilion Slimline desktop computer powered on and running peer-to-peer file sharing software, and numerous files with titles indicative of child pornography were being shared and downloaded through use of the software. The wallpaper image on the computer monitor depicted a naked female child lying on her stomach. Investigators conducted a forensic preview of the desktop computer and other digital media storage devices found in the residence and located numerous images and videos of child pornography on the devices. Investigators then seized several electronic devices from the residence, including the desktop computer, a WD MyBook Essential external hard disk drive, a

1

Seagate Barracuda SATA hard disk drive, a Hitachi SATA hard disk drive, an Adaptec external hard disk drive, a SanDisk Cruzer Micro USB flash media device, and a Nikon Coolpix digital camera. Investigators also found next to BOLLINGER's bed more than 100 pages of handwritten stories about an adult male having sex with prepubescent girls. Photographs of girls Bollinger coached in gymnastics were found throughout the residence, including on display on walls and shelves.

Investigators advised BOLLINGER of his *Miranda* rights, and BOLLINGER agreed to be interviewed. During the interview, BOLLINGER admitted that he was the owner and sole occupant of the residence, that he was the owner of the desktop computer found in the residence, and that file sharing software was installed on the desktop computer. BOLLINGER stated that he had used different file sharing applications, explained how filing sharing software was used, and discussed the benefits of the file sharing application he was currently using, such as faster downloads. BOLLINGER admitted that he saved files of child pornography on an external hard drive and estimated that he had thousands of such files. He characterized his involvement with child pornography as an obsession and stated that the last time he viewed child pornography was the night prior to the search. BOLLINGER stated further that he had been viewing child pornography since approximately 1990 and prefers female children aged 8 to 12 years, the same age group of girls that he currently coached. BOLLINGER denied any inappropriate contact with children but stated that he had sexual thoughts about a girl he coached in gymnastics and that he was attracted to the "body type" of many of the girls he coached. BOLLINGER stated further that when he was approximately 20 years old, he had sex with a 14-year-old girl. He also admitted that he wrote stories about having sex with young girls and masturbated while writing these stories.

Investigators obtained a search and seizure warrant to conduct a forensic examination of the electronic devices seized from the residence. During the forensic examination, investigators found the following:

a) The HP Pavilion Slimline desktop computer had file sharing software installed and contained evidence of searches that had been conducted in the file sharing network with numerous search terms indicative of child pornography. The computer's hard drive also contained files of child pornography that had been shared on the file sharing network and downloaded by investigators prior to the search of BOLLINGER's residence.

b) The WD MyBook Essential external hard disk drive contained over 40,000 image files of child pornography and over 100 video files of child pornography, including depictions of prepubescent minors engaged in sexually explicit conduct. This external hard drive had been previously connected to the desktop computer and the Seagate Barracuda SATA hard disk drive.

c) The Seagate Barracuda hard drive contained files with file names indicative of child pornography.

d) The Hitachi SATA hard disk drive contained a video file of child pornography.

e) The Adaptec external hard disk drive and the SanDisk Cruzer Micro USB flash media device each contained video and image files of child pornography that had been deleted and recovered.

f) The Nikon Coolpix digital camera contained photos of prepubescent girls, including apparent gymnastics students.

\* \* \* \* \*

I have reviewed the foregoing statement of facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as part of my plea agreement with the government in this case.

*[signature]*
Paul Daniel Bollinger

I am counsel for Paul Daniel Bollinger. I have carefully reviewed the Statement of Facts with him.

*[signature]*
Charles L. Waechter, Esquire